**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **LISA WILSON**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**GRAND CANYON UNIVERSITY,** an Arizona non-profit corporation,<br><br>*Defendant.* | Case No. 26cv1153<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Lisa Wilson ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members"), brings this Class Action Complaint ("Complaint") against Defendant Grand Canyon University ("GCU" or "Defendant"), and alleges as follows based upon personal knowledge as to Plaintiff's own acts and experiences, and upon information and belief, including investigation by counsel, as to all other matters:

## NATURE OF THE ACTION

1. This is a class action lawsuit arising from Grand Canyon University's systematic disclosure of its students' and prospective students' personally identifiable information ("PII") and education records to unauthorized third parties, including Google LLC ("Google"), Meta Platforms, Inc. ("Facebook" or "Meta"), and TikTok Ltd. ("TikTok"), without prior notice or consent, through tracking technologies embedded in GCU's website, www.gcu.edu (the "Website").

2. Grand Canyon University is a private Christian university headquartered in Phoenix, Arizona. GCU offers undergraduate, graduate, and doctoral degree programs and enrolls over 100,000 students, approximately 90,000 of whom are enrolled exclusively in online programs. GCU's operations include its website (the "Website") and online learning platforms, through which it recruits prospective students, processes applications, and delivers educational services to students nationwide.

3. Through the Website, GCU allows visitors to search for degree programs, apply for admission through a password-protected application portal, learn about and apply for financial aid, and request to be contacted by GCU enrollment counselors. In the course of these interactions, users communicate their private and personal information via the Website, including PII from education records.

4. Unbeknownst to Website visitors, GCU has knowingly implemented third-party tracking technologies on its Website, including Google Analytics, the Meta Pixel, and the TikTok Pixel (collectively, the "Trackers" or "Tracking Technologies"). When Website visitors search for degree programs, apply for admission and provide personal information in the password-protected portal, request information about financial aid, or otherwise interact with education-related content, GCU enables Google, Meta, and TikTok to intercept these electronic communications without consent.

5. The intercepted information includes: (a) students' names, in hashed form; (b) students' email addresses, phone numbers, and zip codes, in hashed form; (c) students' interest in specific degrees and programs; (d) the specific degrees and programs students

are actively enrolling in; (e) students' current education level and high school graduation year; (f) students' modality of enrollment (online, campus, or evening); and (g) students' service in the military.

6. This interception of private electronic communications occurs in real-time, without appropriate notice to visitors and without obtaining their consent, in violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511 *et seq*.

7. Through this action, Plaintiff seeks to remedy these widespread privacy violations on behalf of a nationwide class, obtain appropriate remedies for thousands of affected individuals, and prevent the continued unauthorized interception of students' and prospective students' electronic communications through the Website.

## PARTIES

8. Plaintiff Lisa Wilson is a natural person and citizen of the State of Illinois, who resides in East Saint Louis, Illinois.

9. Defendant Grand Canyon University is an Arizona non-profit corporation with its principal place of business located at 3300 W. Camelback Road, Phoenix, Arizona 85017.

10. Defendant owns, operates, controls, and manages the Website, through which it solicits and collects personal information from students and prospective students, and through which it has implemented the Tracking Technologies at issue in this action.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because: (a) this is a class action involving more than 100 class members; (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) minimal diversity exists because at least one member of the proposed class is a citizen of a state different from Defendant.

12. This Court also has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, specifically the Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq*.

13. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case or controversy.

14. This Court has personal jurisdiction over GCU because GCU has sufficient minimum contacts with this District. GCU operates a highly interactive Website through which it actively targets and solicits Illinois residents, offering online degree programs available to students nationwide. GCU enrolls students who reside in Illinois in its online programs and provides educational services to students in this District. GCU's Website is specifically designed to solicit applications, collect personal information, and facilitate enrollment from prospective students in Illinois and throughout the United States. This lawsuit arises directly from GCU's Website-related conduct, specifically its

implementation of tracking technology that intercepted the private electronic communications of Illinois residents accessing the site from within this District.

15. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District. Specifically, Plaintiff, who resides in this District, used computers and devices located within this District to access GCU's Website. The alleged unlawful interception of Plaintiff's sensitive electronic communications occurred while Plaintiff was physically present in this District. The Tracking Technologies operated on Plaintiff's browser and device within this District, intercepting Plaintiff's communications in real-time as they were transmitted from this District.

## **<u>FACTUAL ALLEGATIONS</u>**

### *A. Overview of Website Tracking on Educational Websites*

16. Some websites employ tracking technologies that collect personal data about users' online activities. These tracking technologies have become increasingly sophisticated, evolving from simple cookies to complex tracking systems that can monitor detailed user behavior across websites and devices.

17. Website-tracking technologies typically function by placing small pieces of code on websites that are downloaded to a user's browser when they visit the site. Invisible to website users, this code enables the collection of various types of data about the user's interactions with the website, which is transmitted to third-party servers. These tracking codes operate invisibly to ordinary website visitors. Nothing in a user's normal browsing

experience would alert them to the presence of these technologies or the transmission of their communications to third parties.

18. The most basic form of website tracking involves cookies, which are small text files stored on a user's device that identify users and their browsing activity. First-party cookies are placed by the website the user is visiting directly, while third-party cookies are placed by domains other than the one the user is visiting. These third-party cookies enable tracking across multiple websites and are commonly used for advertising and analytics purposes.

19. JavaScript-based trackers represent a more sophisticated tracking method. Website owners implement these trackers by embedding JavaScript code snippets into their website's source code. When a user loads a webpage containing such code, the tracker is downloaded onto the user's browser, where it activates invisibly and collects data about user behavior, which is then transmitted to the tracker provider's servers in real-time.

20. As detailed in this Complaint, GCU has implemented such tracking technology on its Website, resulting in the unauthorized interception of visitors' electronic communications by Google, Meta, and TikTok.

B. *Google Analytics*

21. Google LLC ("Google") is a multinational technology company headquartered in Mountain View, California. Google operates one of the world's largest online advertising platforms, generating over $200 billion in annual revenue primarily through targeted advertising services. Google's business model depends on collecting vast

amounts of user data across its numerous products and services, including Google Search, Gmail, YouTube, and Android, which it then leverages to deliver targeted advertisements.

22. Google Analytics is a widely used analytics tool within the Google Marketing Platform that enables website operators to measure user traffic and engagement, personalize content, and implement effective targeted advertising. Google markets Google Analytics as a platform that offers "a complete understanding of your customers across devices and platforms" to "uncover new insights and anticipate future customer actions with Google's machine learning to get more value out of your data."[1] By embedding code for the Google Analytics Tracker into a website, detailed information about users' interactions is collected and transmitted directly to Google's servers. This data does not remain solely under the control of the website operator but is shared with Google and used for additional purposes, including user profiling and targeted advertising.

23. Website owners or administrators implement Google Analytics by adding a snippet of JavaScript code to their website. GCU has implemented the Google Analytics tracker on its Website.

24. Once implemented on a website, including on GCU's Website, Google Analytics loads automatically and immediately whenever a user visits a page containing the Tracker's source code. The tracking code executes in the background without any visible indication to the user, making it completely invisible to ordinary website visitors. Only users with technical knowledge who deliberately inspect the page's source code or

---

[1] *Analytics*, Google Marketing Platform, https://marketingplatform.google.com/about/analytics/ (last visited August 24, 2026).

use specialized browser tools might detect the presence of these tracking mechanisms and the interception of their communications by Google.

25. When a user accesses a website that includes Google Analytics while logged into a Google Chrome browser or signed into their Google Account on that same browser (such as through Gmail or YouTube), Google assigns unique identifiers to that session through third-party cookies including 3PSID, 3PAPISID, and 3PSIDCC. These cookies are set by Google services (such as google.com) and are explicitly tied to the user's logged-in Google account. The values of these cookies are unique to each account holder and persist across sessions and devices as long as the user remains signed in.

26. When creating a Google account, users are required to provide an email address, meaning that data collected alongside the 3PSID, 3PAPISID, and 3PSIDCC cookies can be linked by Google to an identifiable email address. Many Google account users also voluntarily provide additional identifying information to Google such as their full name, phone number, home address, work address, profile photograph, and recovery email – either during account creation or while using other Google services. As a result, Google can associate the data collected alongside the cookies not only with an email address, but with a named and potentially highly personalized user profile. This enables Google to link a user's private activity on a website to their name and broader aspects of their digital identity, particularly when combined with other data collected across Google's ecosystem, such as Gmail usage, YouTube views, or Google Maps history.

27. For users who are not signed into a Google account, Google sets a different type of cookie, known as the NID cookie. The NID cookie is tied to the user's browser rather than to a named account. It still contains a unique identifier that persists for approximately 6 months, unless a user manually "clears" their cookies (upon which Google will automatically generate a new, unique identifier associated with the NID cookie). The NID cookie enables Google to track user preferences, browsing behavior, and ad interactions across websites that use the Google Analytics Tracker or serve Google Ads. While the NID cookie does not reveal a named account identity, it still allows Google to build behavioral profiles and serve personalized advertisements based on a user's activity, including activity on GCU's Website. Google's Privacy Policy expressly acknowledges its practice of tracking users, even when they are not logged in, via sites that have installed Google Analytics. Per Google's own statement: "[w]hen you're not signed in to a Google Account, we store the information we collect with unique identifiers tied to the browser, application, or device you're using. This allows us to do things like maintain your preferences across browsing sessions, such as your preferred language or whether to show you more relevant search results or ads based on your activity."[2]

28. These 3PSID, 3PAPISID, 3PSIDCC and NID cookies can constitute PII, as they are unique to each user and may be used to identify individuals. The data gathered by these cookies is used to create user profiles based on individual interests, enabling Google to deliver more targeted advertisements.

[2] Google, *Privacy Policy,* https://policies.google.com/privacy/embedded?hl=en-US (last visited August 24, 2026).

29. In addition to providing customers with analytics services, Google also uses the data collected through Google Analytics and other tracking technologies for its own purposes, including to improve its ad targeting capabilities, machine learning and AI models, products and services, and data collections on users.

C. *Meta's Business Tools and the Meta Pixel*

30. Meta operates the world's largest social media company and generated $164 billion in revenue in 2024, almost all of which comes from advertising. Meta's advertising business has been extremely successful due, in large part, to Meta's ability to target people at a granular level.

31. In conjunction with its advertising business, Meta encourages and promotes entities and web property owners, such as GCU, to utilize its "Business Tools" to gather information about people, identify, target, and market products and services to them.

32. One such Business Tool is the Meta Pixel. The Meta Pixel is a small snippet of website code written by Meta engineers. To use the Meta Pixel, an advertiser places the pixel (i.e., a code snippet) on their website. GCU has implemented the Meta Pixel on its Website.

33. The Meta Pixel is designed to track users and the type of actions they take across all pages accessible on a web property with a single code snippet. When a user accesses a webpage on a web property using the Pixel, their communications with every webpage are instantaneously and surreptitiously intercepted and recorded by the Meta Pixel and sent to Meta's servers.

34. Through this technology, Meta intercepts information about each page a user visits, what buttons they click, as well as specific words they type into form boxes (e.g., when applying for admission or searching for degree programs) on the web property. Meta also receives "events" data reflecting data fields identified by the web property owner, which can reveal even more information about the individual and their specific interactions or communications.

35. Meta links the intercepted data to individuals through specific cookies. The "c_user" cookie is directly linked to the user's Facebook profile if they have logged into their Facebook account on the same browser. When users sign up for a Facebook account, they are required to use their real identities, including first and last names. Users are only allowed one account, must use the name they use in "everyday life," and must also provide their birthday and gender. The c_user cookie serves as a unique identifier for an individual's Facebook account and allows Meta to personally identify the user and link their activity on the website they browsed to their social media profile.

36. The "fr" cookie is also a browser cookie utilized by Meta to facilitate targeted advertising and gather analytics. This cookie contains a unique identifier that enables Meta to track users' activities across various websites and devices, thereby collecting data on user behavior and preferences. Unlike the c_user cookie, which specifically identifies logged-in Facebook users, the fr cookie identifies both Facebook users and non-Facebook users, allowing Meta to track individuals even if they do not have an active Facebook account.

37. The Meta Pixel also has an "Advanced Matching" feature, which GCU enabled in its implementation of the Meta Pixel on the Website. When Advanced Matching is enabled, the Meta Pixel looks for recognizable form fields and other sources on the website that contain information such as first name, last name, email address, and phone number. According to Meta's documentation, Advanced Matching allows website owners to send hashed customer information along with their Meta Pixel events, which helps identify more users who completed desired actions on the website, such as submitting an application or filling out a contact form, and reach more people with targeted advertising.[3] The Advanced Matching information is recorded, along with the specific event or action that occurred, through a one-way process known as "hashing," under which the SHA-256 algorithm transforms data into a secure format. Hashing is not anonymization, and it does not prevent Meta from identifying the user or from understanding the substance of the hashed communications.

38. Meta stores the data captured by the Meta Pixel on its own servers for its own commercial purposes, including for its own advertising business. Meta's documentation confirms that Meta feeds the data received through the Meta Pixel into "machine learning models" that "consider that person's behavior" to predict who is likely to respond to any given ad, making its advertising services even more lucrative.[4] These

---

[3] Meta, *About advanced matching for web,* https://www.facebook.com/business/help/611774685654668?id=1205376682832142 (last visited August 24, 2026).
[4] Meta, *Good Questions, Real Answers: How Does Facebook Use Machine Learning to Delive*r, (June 11, 2020), https://www.facebook.com/business/news/good-questions-real-answers-how-does-facebook-use-machine-learning-to-deliver-ads (last visited August 24, 2026).

machine learning models learn more about individuals as they receive new data.[5] Thus, each person whose data Meta receives through the Meta Pixel directly contributes to how successful Meta is at targeted advertising and contributes to Meta's ad revenue.

*D. TikTok's Tracking Platform*

39. TikTok has more than 1 billion monthly users worldwide and is one of the top five largest social media companies. TikTok's main source of revenue is selling ads.

40. To increase its advertising revenue, TikTok offers tracking and analytics services, including through the TikTok Pixel. The TikTok Pixel is a code snippet implemented by site owners onto their websites that enables website owners to track users' website interactions. GCU has implemented the TikTok Pixel on its Website.

41. Once installed, the TikTok Pixel tracks users' interactions, including what pages they view, buttons they click on, and information they enter, along with a unique identifier. The TikTok Pixel intercepts these communications immediately after they are sent and before they are received by the website operator.

42. Additionally, the TikTok Pixel collects and reports supplementary metadata to TikTok, which includes timestamps, IP addresses (used to determine the geographic location of an event), device details (make, model, operating system), and browser information.

43. Once the TikTok Pixel is installed, it creates cookies on visitors' web browsers when the website is visited. The "_ttp" cookie is a tracking cookie used by

---

[5] *Id.*

TikTok to identify a visitor, whether the user has a TikTok account or not. If the user is logged into a TikTok account, the requests sent to TikTok contain cookies that can be used to link the data shared to the user's TikTok profile.

44. The _ttp cookie remains constant for approximately 12 months, unless a user manually clears their cookies, upon which the TikTok Pixel will automatically generate a new, unique _ttp identifier. The persistent nature of the _ttp cookie allows TikTok to maintain continuous tracking of users across multiple browsing sessions by linking new IP addresses to the unique _ttp identifier.

45. The _ttp identifier also enables retroactive identification. If a user visits the Website before ever creating a TikTok account, the _ttp identifier begins collecting their browsing data and IP addresses. If that user later creates a TikTok account or logs into an existing account on a device where the _ttp identifier is present, TikTok can retroactively associate all previously collected data with their newly identified profile. This means that Website visitors' past activities, including their education-related searches and application data, can be linked to their identities even if those activities occurred before they created their TikTok accounts.

46. Further, if a user logs into TikTok on multiple devices, TikTok can link the separate _ttp identifiers on each device to the same user profile, creating a comprehensive record of that user's Website activities across all their devices.

47. Additionally, TikTok offers the "AutoAdvanced Matching" feature, which GCU enabled in its implementation of the TikTok Pixel on the Website. The

AutoAdvanced Matching is another way to accurately associate events collected by the TikTok Pixel to a specific user. It works by automatically collecting form data, including email addresses and phone numbers. This data is then used to enhance the accuracy of user matching to their profiles created by TikTok, improving the targeting of ads. The AutoAdvanced Matching feature is not enabled by default; website owners such as GCU must actively choose to enable it, agreeing to share their users' phone numbers and email addresses with TikTok.

48. TikTok uses the data collected through the TikTok Pixel for its own purposes, including training machine learning models, improving targeting capabilities, creating custom and look-alike audiences, and for reporting purposes.

*E. IP Addresses and Geolocation*

49. In addition to the cookies and user identifiers described above, the Meta Pixel and the TikTok Pixel also collect and transmit users' IP addresses to their respective operators, who store them in server logs alongside the other information captured by the respective trackers. An IP address is a globally unique numerical identifier that guides or routes communications across the internet. Often written as four sets of numbers separated by periods (e.g.,94.140.9.22), Internet Service Providers assign IP addresses to networking devices such as modems or routers.

50. IP addresses function as the essential addressing system of the internet. Just as a telephone number routes calls to the correct household, an IP address is necessary for routing internet communications to the correct location. Importantly, IP addresses reveal

the geographic location of internet users. Free online "IP lookup" services use databases that map IP addresses to geographic areas and potentially specific households, often providing information about the country, city, county, approximate coordinates, or even the internet service provider associated with the address.

51. The geolocation capability of IP addresses makes them extraordinarily valuable for digital advertising and tracking. IP addresses allow companies to target advertisements to users in specific geographic areas with over 95% accuracy and track user interactions across multiple websites, building detailed profiles of users' browsing habits tied to their location.

52. IP addresses are particularly powerful when combined with persistent cookie identifiers, such as the c_user and _ttp cookies. When individuals use their devices across different locations (home, work, coffee shops), each location has its own IP address. By tracking these movement patterns between different IP addresses and correlating them with cookies, Meta and TikTok can build detailed profiles of individual users' daily routines and behaviors that distinguish them from others who may share the same IP address. This combination of cookies and IP address patterns allows Meta and TikTok to identify and track specific individuals with remarkable precision, even when multiple people share the same household or workplace network.

53. For these reasons, Europe's General Data Protection Regulation ("GDPR") classifies IP addresses as "personal data," recognizing that even data that has been de-identified or pseudonymized but can be used to re-identify a person remains personal data.

When Meta and TikTok combine IP addresses with cookies and the browsing data, they can create a comprehensive digital profile.

54. In addition to IP addresses, each of the Tracking Technologies also collects supplementary metadata about Website visitors, including timestamps recording when actions were taken, device details such as make, model, and operating system, and browser information. This metadata further contributes to the creation of unique digital fingerprints that enable Google, Meta, and TikTok to identify and track individual users across browsing sessions.

*F. GCU's Implementation of the Tracking Technologies and Disclosure of Education Information*

55. GCU deliberately implemented Google Analytics, the Meta Pixel, and the TikTok Pixel in the source code of its Website, procuring Google, Meta, and TikTok to intercept protected education information and electronic communications of its students and prospective students without proper consent.

56. The Tracking Technologies operate on pages of the Website where users search for degree programs, apply for admission, request information about financial aid, request to be contacted by enrollment counselors, and explore academic programs. The Tracking Technologies operate invisibly to Website visitors, who have no meaningful way of knowing that their sensitive education queries and browsing behaviors are being intercepted by Google, Meta, and TikTok.

57. The information intercepted through these Trackers includes electronic communications between the visitor and GCU regarding the visitor's educational interests,

enrollment activity, and academic preferences. When combined with the identifying cookies and a user's IP address, this information allows Google, Meta, and TikTok to identify individual users and associate sensitive education information with their digital profiles.

58. **User Fills Out Form Requesting to be Contacted by GCU Representative:** Users request more information by filling out the "Start your GCU journey today" form, displayed prominently on every webpage on the Website, indicating that they wish to be contacted by a GCU enrollment counselor. While filling out this form, students must provide information about the degree they wish to pursue, personal information, and contact information. Users' activity is transmitted in real time to Google and Meta via Google Analytics and the Meta Pixel, alongside unique identifying third-party cookies.

59. Specifically, the following information is intercepted and transmitted to Google via Google Analytics: (a) the user's interest in a specific modality of enrollment (e.g., online classes); (b) the user's selected area of study and specific degree program; (c) the user's current education level; (d) the user's high school graduation year; and (e) the user's military service status.

60. Simultaneously, the Meta Pixel transmits to Meta: (a) the user's full name, email address, phone number, and zip code, in hashed form, via the Advanced Matching feature; (b) a "Lead" event indicating that the user has submitted a contact form on GCU's Website; and (c) the full URL of the page the user is visiting and the page description,

which identifies the page as belonging to GCU. The hashed PII is transmitted alongside the identifying cookies described above, which independently enable Meta to identify the user, as well as the user's IP address.

61. **User Applies to GCU:** Users apply to GCU through the online application portal at apply.gcu.edu, which requires users to register for an account and log in with their credentials. The application portal is password-protected, signaling to prospective students that the information they submit within it will be kept secure and confidential. Despite this, the Tracking Technologies intercept users' communications at multiple stages of the application process from within the password-protected environment.

62. When a user registers for an application account, the Meta Pixel transmits to Meta a "SubscribedButtonClick" event alongside the full URL of the application registration page, revealing that the user has registered for a GCU application. This transmission also includes the structure of the application form itself, including field names such as FirstName, LastName, Email, Phone, Modality, CampusHousingInterest, and PreviouslyApplied, revealing the categories of personal information GCU collects from applicants. The user's full name, email address, phone number, and zip code are transmitted to Meta via the Advanced Matching feature. This PII is transmitted alongside the identifying cookies described above, which also independently enable Meta to identify the user.

63. As the user progresses through the application, the Meta Pixel continues to transmit data from within the password-protected portal. When the user selects a degree

program, the Meta Pixel fires an "AddToCart" event to Meta containing the specific degree program the user is applying for, in plain, unhashed text, categorized as a "product." For example, a user's selection of a "Bachelor of Science in Early Childhood Education" is transmitted directly to Meta in readable form. The referrer URL transmitted alongside this event reveals that the user navigated from the "DemographicInformation" page to the "ProgramSelection" page, exposing the user's path through the application and confirming that the user has submitted demographic information to GCU. This information is transmitted alongside the identifying cookies that enable Meta to associate the degree selection with the user's Facebook profile.

64. Separately, the TikTok Pixel transmits to TikTok a "StartTrial" event alongside the full URLs of the application registration and security questions pages within the password-protected portal, revealing that the user has begun the GCU application process. This transmission includes the _ttp cookie, a TikTok-assigned anonymous identifier, device and browser information, and multiple session identifiers that enable TikTok to track the user across browsing sessions.

65. All of this information is transmitted in real time from within the password-protected application environment, without the user's knowledge or consent.

66. **User Fills Out Form Regarding Military Tuition Assistance:** Users serving in the military who are interested in receiving assistance with tuition may request more information by filling out the "Start your GCU journey today" form on the "Military Tuition Assistance" page. While filling out this form, indicating the user's interest in

receiving assistance with tuition as a service member, students must provide information about the degree they wish to pursue, personal information, and contact information. This information, including the user's interest in specific online programs, areas of study, current education level, and military service status, is transmitted in real time to Google via Google Analytics embedded in the Website's code, alongside the unique identifying third-party cookies associated with Google Analytics.

67. **Additional transmissions:** Upon information and belief, GCU may have also implemented Tracking Technologies on additional authenticated platforms, including post-enrollment student portals and learning management systems used by enrolled students. In addition, Meta, Google, and TikTok each offer server-to-server connections and integrations with third-party data platforms that allow customers like GCU to upload user data directly. These server-side data flows are not observable by anyone other than GCU and the recipient, and therefore cannot be detected through technical analysis of the Website. Upon information and belief, GCU may have transmitted additional PII and education records to Google, Meta, and TikTok through these server-side channels. The full extent of GCU's use of Tracking Technologies and data sharing practices across its web properties is within GCU's exclusive knowledge and control, and will be identified during discovery.

68. Upon information and belief, Google, Meta, and TikTok add this intercepted education-related data to their vast and sophisticated commercial advertising ecosystems, combining it with information from their networks of partner websites. The data is used to

create comprehensive user profiles that include sensitive education information, which can be used for targeted advertising and other commercial purposes, including real-time ad bidding, behavioral segmentation, and cross-contextual tracking, all of which serve purposes entirely unrelated to the provision of educational services. In procuring the interception and transmission of users' sensitive education-related information to Google, Meta, and TikTok, GCU initiates the commercial exploitation of that information, an action at odds with the reasonable privacy expectations and the legal protections afforded to students.

*G. The Family Educational Rights and Privacy Act and Education Records*

69. The Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g and 34 CFR Part 99, restricts the disclosure of personally identifiable information from students' education records by federally funded educational institutions.

70. "Education records" are broadly defined as records directly related to a student and maintained by the institution or its agents. This includes academic records, enrollment information, and data generated through online educational platforms, such as course selection, enrollment activity, and student engagement with coursework.

71. FERPA applies to students, or parents of students under the age of 18, who attend entities that qualify as "Educational Agencies or Institutions," defined as any public or private agency or institution which is the recipient of funds under any applicable program. GCU is subject to FERPA.

72. FERPA prohibits the disclosure of PII from education records without the student's signed and dated written consent, subject to limited exceptions. PII includes students' names, addresses, personal and indirect identifiers such as social security numbers or dates and places of birth, as well as the names and numbers of academic courses and degrees, and information entered when completing the online enrollment process.

73. The information GCU disclosed to Google, Meta, and TikTok through the Tracking Technologies constitutes PII from education records within the meaning of FERPA. This information includes, among other things, students' names, email addresses, phone numbers, and zip codes (in hashed form), as well as their interest in specific degrees and programs, current education level, high school graduation year, modality of enrollment, and military service status. This information is directly related to students and was maintained by GCU through its online educational platforms.

74. Accordingly, GCU's disclosure of this personally identifiable information from education records to Google, Meta, and TikTok without obtaining the required written consent constitutes a violation of FERPA, 20 U.S.C. § 1232g.

*H. GCU's Failure to Obtain Consent for the Interception*

75. GCU fails to obtain consent from Website users before procuring the interception of their electronic communications by Google, Meta, and TikTok. At no point during users' interactions with the Website is their consent to such interception sought or obtained. Users are not presented with any adequate notice of the tracking practices, are

not asked to agree to such practices, and are not required to take any affirmative action manifesting consent before their electronic communications are intercepted.

76. The Trackers begin intercepting users' electronic communications immediately and automatically upon visiting the Website, before users have any opportunity to review or consent to such practices. Users have no meaningful way to decline or opt out of this interception while still using the Website to access educational information and services.

*I. Visitors to the Website Reasonably Expect Their Information to Stay Private*

77. GCU operates its Website as an extension of its educational services, facilitating student recruitment, enrollment, and the provision of academic information. When using these online services, visitors input their personal and educational information with the reasonable expectation that such information will be kept confidential and used only for legitimate educational purposes.

78. Users of the Website reasonably expect that their communications and activities will remain private, particularly given GCU's status as an educational institution subject to FERPA and other privacy regulations, as well as GCU's obligations to protect the confidentiality of student education records.

79. This expectation of privacy is reinforced by FERPA, which was enacted specifically to protect the privacy of student education records and to prohibit the disclosure of PII from such records without consent. The existence of FERPA further

confirms that Plaintiff and Class Members have a reasonable expectation not to have their PII and education data disclosed to third parties.

80. Users would not reasonably expect that simply by visiting GCU's Website to search for degree programs, apply for admission, explore financial aid options, or request information about academic programs, their sensitive education information would be intercepted by Google, Meta, and TikTok for purposes unrelated to their educational needs.

*J. GCU's Responsibility for the Interception of Electronic Communications*

81. Although Google, Meta, and TikTok perform the technical functions of intercepting electronic communications, GCU bears full legal responsibility for these actions as the entity that has procured Google, Meta, and TikTok to intercept these communications.

82. GCU made the affirmative decision to implement Google Analytics, the Meta Pixel, and the TikTok Pixel on its Website. This implementation was a deliberate action requiring GCU's web administrators to copy the tracking code and insert it into the Website's source code. Without GCU's deliberate implementation of this code, Google, Meta, and TikTok would have no access to the electronic communications of the Website's visitors.

83. GCU controls which pages of its Website contain the tracking code and could choose to exclude tracking from sensitive pages where education information is accessed or inputted, yet it has chosen to implement tracking across these sensitive areas

of its Website. GCU maintains complete control over its Website and has the ability to remove or modify the Trackers at any time. Its continued use of these Trackers represents an ongoing choice to procure Google, Meta, and TikTok to intercept electronic communications from visitors to the Website.

84. GCU has procured Google's, Meta's, and TikTok's services to intercept electronic communications from its Website visitors and has arranged, aided, and abetted the interception of these communications by Google, Meta, and TikTok, where the data is then stored, analyzed, and potentially combined with other data in these companies' possession.

85. GCU knew at the time it incorporated the Tracking Technologies on the Website that they would result in the disclosure of users' private communications to third parties by virtue of the Tracking Technologies' purpose, how they function, and the analytics and advertising services GCU received as a result.

86. GCU receives direct benefits from implementing these Trackers, including the ability to deliver targeted advertising and marketing attribution, retargeting, lead-generation, enrollment-conversion, and advertising-optimization benefits. These benefits further establish GCU's responsibility for procuring the interception practices that generate these capabilities.

87. These arrangements constitute a procurement of another person to intercept electronic communications without the consent of all parties to the communication, in direct violation of 18 U.S.C. § 2511 of the ECPA.

## INJURY TO PLAINTIFF AND CLASS MEMBERS

88. GCU's procurement of unauthorized interception of Website user communications has caused actual harm to Plaintiff and Class members in multiple ways.

89. *Invasion of Privacy:* Plaintiff and Class Members have suffered an invasion of their privacy through the unauthorized interception of their electronic communications and education-related activities. Congress enacted FERPA specifically to ensure that students retain control over who may access their education records, recognizing that these records contain personal information that students entrust to educational institutions in confidence. The information GCU disclosed to third parties, including students' interest in specific academic programs, their education level, military service status, and contact information, is the type of information Congress sought to protect: data that reveals personal circumstances, life decisions, and socioeconomic background, and that students would not expect to be shared with advertising companies for commercial exploitation. Military service status in particular is information that individuals may have strong reasons to keep private, and that is separately protected in other statutory contexts. By disclosing this information to Google, Meta, and TikTok without consent, GCU deprived Plaintiff and Class Members of the control over their personal information that FERPA was designed to guarantee, and violated their reasonable expectation that their interactions with an educational institution would remain between them and that institution.

90. *Loss of Data Value*: Plaintiff and Class Members have been deprived of the economic value of their personal data. Personal data has significant commercial value in

today's digital economy. An estimate from 2019 suggests that internet companies earned $202 per American user from mining and selling user data.[6] That number has likely increased since then, given the ever-increasing value of user data in an increasingly digital world.

91. The education-based data GCU disclosed is particularly valuable. Educational institutions spend approximately $200 per lead when advertising to attract prospective students, with costs reaching up to $1,000 per lead for specialized institutions.[7] Yet even at those prices, the data purchased from third-party lead generators is often of limited value: only about 2% of individuals identified through purchased leads ultimately enroll, and roughly half never respond to the institution's outreach.[8] By contrast, the data GCU disclosed through its Tracking Technologies was captured from prospective students who had already demonstrated genuine interest by voluntarily visiting GCU's Website and providing detailed information about their academic interests, education level, and personal circumstances. This organically captured data from self-selecting, high-intent individuals is substantially more valuable than purchased leads. Data about these high-value prospective students are also extremely valuable to Meta, Google, and TikTok as they seek to attract more companies to their advertising services and broaden their profiles about specific individuals.

---

[6] Robert J. Shapiro, Washington Monthly, *What Your Data Is Really Worth to Facebook* (July 12, 2019), https://washingtonmonthly.com/2019/07/12/what-your-data-is-really-worth-to-facebook/ (last visited August 24, 2026).

[7] Patrick Van Gorder, Level, *Higher education lead generation in 2025: Reimagining pay-per-lead strategies*, https://www.level.agency/perspectives/higher-education-lead-generation-ppl-strategies (last visited August 24, 2026).

[8] *Id.*

92. For example, Meta has specific advertising functions that allow advertisers to target users who attended particular educational institutions. It also allows targeting based on highest level of education, years in college, and education majors, all of which is information that GCU provides to Meta through the Tracking Technologies.[9] This confirms that the type of PII and education data GCU disclosed has objective market value and is actively exploited for commercial purposes.

93. Plaintiff's and Class Members' private and personal data, including their protected education information, IP addresses, and digital identifiers, have a recognized monetary value. GCU's procurement of unauthorized interception by Google, Meta, and TikTok of this sensitive personal data has deprived Plaintiff and Class Members of the economic value of their personal property without proper consideration and has resulted in GCU unjustly enriching itself at the expense of Plaintiff and Class Members.

94. *Risk of Further Use of Intercepted Data:* Once intercepted by Google, Meta and TikTok, Plaintiff's and Class members' data is beyond their control. This creates an ongoing risk that their education-related information may be further processed, combined with other data sources, or potentially used by additional third parties, causing continued and future harm.

[9] Meta, *Advanced Targeting*, https://developers.facebook.com/docs/marketing-api/audiences/reference/advanced-targeting (last visited August 24, 2026).

95. *Statutory Injury:* Independent of the above harms, GCU's violation of the ECPA has caused Plaintiff and Class members to suffer statutory injury, entitling them to statutory damages provided by law.

## PLAINTIFF'S EXPERIENCES

96. Plaintiff Wilson is a former student of GCU who regularly visited the Website on her desktop and laptop computers and her iPhone during the Class Period in or near her home in Illinois. Plaintiff Wilson also regularly used GCU's student portal, accessible on the Website. When Plaintiff Wilson visited the GCU Website, the Website's code—as programmed by Defendant—caused the Trackers to be installed on Plaintiff's browsers. During Plaintiff's visits to the Website, Plaintiff searched for and browsed various academic degree programs and student activities. In doing so, Plaintiff necessarily disclosed to the Website information reflecting her personal interests in specific academic programs and events in which Plaintiff had a reasonable expectation of privacy. Plaintiff did not expect, and had no reason to expect, that her searches would be intercepted by the Trackers and transmitted to third parties like Google, Meta, and TikTok without her knowledge or consent.

97. Through their respective Trackers, these third parties collected information concerning the exact webpages Plaintiff Wilson visited, along with her IP address and other device fingerprint information that allowed the third parties to pervasively track Plaintiff Wilson across multiple Website sessions and even other websites, as well as de-

anonymize Plaintiff Wilson by synchronizing her user profile amongst each other and with other undisclosed entities.

98. GCU and the third parties used the information collected by the Trackers to: (a) identity Plaintiff Wilson and either create a new profile of her or match Plaintiff Wilson to a pre-existing profile (either in the third parties' own databases or with another entity's profile); (b) sell Plaintiff Wilson's information to advertisers for hyper-targeted advertising based on the information collected by the third parties on the Website and the information contained on any profiles of Plaintiff Wilson (which are linked to Plaintiff Wilson via the information collected by the third parties on the Website); (c) actually target Plaintiff Wilson with advertisements and serve advertisements on Plaintiff Wilson based on the information collected by the third parties on the Website and the information contained on any profiles of Plaintiff Wilson (which are linked to Plaintiff Wilson via the information collected by the third parties on the Website); (d) de-anonymize Plaintiff Wilson and generate revenue from the sale of Plaintiff Wilson's information—both the data collected on the Website and the linked profiles containing this data—to advertisers, thus boosting Defendant's, advertisers', and the third parties' revenue and the value of the third parties' services.

99. At no time when Plaintiff entered the Website and viewed its content did she authorize GCU or consent to GCU installing third-party Trackers on her internet browsers, desktop or laptop computers or smartphone. Nor did she consent to Defendant collecting and disclosing her browsing data, IP addresses and other device fingerprint information to

third parties. Further, because GCU did not provide notice or request permission, Plaintiff was wholly unaware of and had no opportunity to opt out of Defendant's unauthorized disclosure of her data.

## CLASS ACTION ALLEGATIONS

100. Plaintiff brings this action on behalf of herself individually and on behalf of all other persons similarly situated pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

101. Plaintiff seeks to represent the following nationwide class:

> All individuals who visited Grand Canyon University's Website during the applicable statute of limitations period (the "Class Period") and whose electronic communications with GCU's Website were intercepted and transmitted to third parties through Trackers without the individuals' consent.
>
> Excluded from the Class are: (a) Defendant and its officers, directors, employees, subsidiaries, and affiliates; (b) the Judge presiding over this action and any member of the Judge's immediate family and staff; (c) any juror assigned to this case; and (d) governmental entities.

102. Plaintiff reserves the right to modify, change, or expand the Class definitions based upon discovery and further investigation.

103. *Numerosity*: The Class is so numerous that joinder of all members is impracticable. GCU is one of the largest Christian universities in the United States, with a diverse student body enrolled across more than 200 areas of study. The Website receives significant traffic annually. The Class size is estimated to be in the tens or hundreds of thousands.

104. *Commonality and Predominance*: There are questions of law and fact common to the Class that predominate over any questions affecting only individual members. These common questions include:

(a) Whether GCU implemented Google Analytics, Meta Pixel, and TikTok Pixel or any other Tracker on its Website;

(b) Whether the Trackers intercepted Website users' electronic communications;

(c) Whether GCU procured, enabled, and aided and abetted the interception of Website users' electronic communications;

(d) Whether Website users consented to the interception of their electronic communications;

(e) Whether GCU's conduct violated 18 U.S.C. § 2511 of the ECPA;

(f) Whether GCU's disclosure of PII from education records violated FERPA;

(g) Whether GCU breached an implied contract with Plaintiff and Class Members;

(h) Whether GCU's procurement of interception of Website users' electronic communications constitutes an invasion of privacy;

(i) Whether GCU has been unjustly enriched through its conduct;

(j) Whether Plaintiff and Class Members are entitled to damages and other monetary relief, and if so, in what amount;

(k) Whether Plaintiff and Class Members are entitled to equitable relief, including but not limited to injunctive relief.

105. *Typicality*: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and Class Members all visited the Website and had their electronic communications intercepted without their consent. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Class Members and are based on the same legal theories.

106. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Class.

107. *Superiority*: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for numerous reasons. The damages suffered by many Class Members may be relatively small compared to the burden and expense of individual litigation, making it difficult for Class Members to individually redress the wrongs done to them. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for GCU. In contrast, a class action will present far fewer management difficulties, allows claims to be heard that might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides

the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

108. *Injunctive Relief Appropriate*: GCU has acted or refused to act on grounds generally applicable to the Class as a whole, making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class.

## CAUSES OF ACTION

### COUNT I:
### Violations of the Electronic Communications Privacy Act (18 U.S.C. § 2511)
### (On behalf of the Class)

Plaintiff incorporates the above paragraphs by reference and further alleges—

109. The Electronic Communications Privacy Act ("ECPA") prohibits the intentional interception of electronic communications and the procuring of any other person to intercept electronic communications. 18 U.S.C. § 2511(1)(a).

110. The ECPA protects both the sending and receipt of communications and provides a private right of action to any person whose electronic communications are intercepted, disclosed, or intentionally used in violation of 18 U.S.C. § 2511(1)(a). 18 U.S.C. § 2520(a).

111. The transmissions between Plaintiff and Class Members and GCU's Website are "transfers of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce" and therefore constitute "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

112. The ECPA defines "content" to "include any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). The information intercepted here, including degree program searches, application data, enrollment preferences, and personal information, constitutes content under the ECPA.

113. Google Analytics, the Meta Pixel, and the TikTok Pixel; implemented by GCU on its Website constitute "electronic, mechanical, or other devices" within the meaning of 18 U.S.C. § 2510(5) because they are specifically designed to intercept and acquire the contents of electronic communications between Website visitors and GCU.

114. The ECPA defines "interception" as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). As described above, the Trackers are embedded software that acquire the contents of users' communications as they are inputted by users into GCU's Website, in real-time and contemporaneously with their transmission.

115. By deliberately implementing the Google Analytics, Meta Pixel, and TikTok Pixel tracking technologies on its Website, GCU procured Google, Meta, and TikTok to intercept its visitors' electronic communications. Specifically: (a) GCU made the affirmative decision to embed Google's, Meta's, and TikTok's code into its Website; (b) GCU's implementation of this code was the necessary predicate act that enabled Google, Meta, and TikTok to intercept users' communications; without GCU's actions, Google, Meta, and TikTok would have no access to the communications; (c) GCU controls which pages contain the tracking code and could have excluded it from sensitive areas where

education information is transmitted, but chose not to; (d) GCU maintains an ongoing relationship with Google, Meta, and TikTok and continues to facilitate their interception of user communications; (e) GCU receives benefits from this arrangement, including advertising capabilities and potentially increased revenue, creating a quid pro quo relationship.

116. Through this procurement, GCU caused Google, Meta, and TikTok to intercept, in real-time, the electronic communications of users containing sensitive education information, in violation of 18 U.S.C. § 2511(1)(a).

117. By intentionally using or endeavoring to use the contents of these intercepted communications, knowing or having reason to know the information was obtained through illegal interception, Defendant violated 18 U.S.C. § 2511(1)(d).

118. Plaintiff and Class Members had a reasonable expectation that their communications with an educational institution's website would remain confidential and would not be intercepted by third parties that GCU had procured for commercial purposes.

119. Plaintiff and Class Members did not consent to GCU's procurement of third-party interception and sharing of their education information for advertising and analytics purposes.

120. GCU was not acting under color of law when procuring these interceptions, and no other exception to ECPA liability applies. The one-party consent exception does not apply because GCU's interception was for the purpose of committing an independent

crime or tort, namely the unauthorized disclosure of PII from education records in violation of FERPA, 20 U.S.C. § 1232g.

121. As a direct result of GCU's violations, Plaintiff and Class Members are entitled to: (a) actual damages or statutory damages of $100 per day per violation or $10,000, whichever is greater; (b) punitive damages; and (c) reasonable attorneys' fees and costs under 18 U.S.C. § 2520.

**COUNT II**
**Breach of Implied Contract**
**(On behalf of the Class)**

Plaintiff incorporates the above paragraphs by reference and further allege—

122. Plaintiff and Class Members entered into implied contracts with GCU when they used the Website to seek educational services, research degree programs, apply for admission, explore financial aid, and manage their educational needs.

123. As part of these implied contracts, Plaintiff and Class Members provided their sensitive personal and educational information and electronic communications to GCU.

124. In exchange, GCU agreed to provide educational information and services and, crucially, to maintain the privacy and confidentiality of the sensitive data transmitted through the Website.

125. The terms of this implied contract were established by the nature of the institution-student relationship, GCU's status as an educational institution subject to

FERPA and the reasonable expectations of students and prospective students seeking educational services.

126. As an educational institution subject to FERPA, GCU is required by law to obtain signed and dated written consent before disclosing personally identifiable information from a student's education records. 20 U.S.C. § 1232g; 34 C.F.R. § 99.30. This legal obligation reinforced the terms of the implied contract between GCU and its students and prospective students.

127. Plaintiff and Class Members performed their obligations under the implied contracts by providing their data and engaging with GCU's educational ecosystem.

128. GCU breached these implied contracts by systematically intercepting and disclosing Plaintiff's and Class Members' sensitive education information to third parties, including Google, Meta, and TikTok, for commercial advertising purposes, without consent.

129. The breach of confidentiality was a material failure of the implied contract, as the protection of sensitive educational data is a fundamental expectation in the educational context, one that is reinforced by federal law and GCU's own representations.

130. As a direct and proximate result of GCU's breach, Plaintiff and Class Members have suffered damages, including: (a) the loss of the benefit of their bargain, as they received educational services that were diminished in value due to the failure to provide the promised confidentiality; (b) the loss of the economic value of their sensitive

personal and education data; and (c) the invasion of their privacy and the unauthorized dissemination of their private educational interests.

**COUNT III:**
**Invasion of Privacy - Intrusion Upon Seclusion**
**(On behalf of the Class)**

Plaintiff incorporates the above paragraphs by reference and further allege—

131. Plaintiff and Class Members had a reasonable expectation of privacy in their communications with GCU regarding their educational needs, academic interests, and personal information, and that GCU would not implement Tracking Technologies on its Website to secretly transmit their communications to unauthorized third parties.

132. GCU's implementation of a password-protected application portal further reinforced users' reasonable expectation of privacy. By requiring prospective students to create accounts and authenticate before submitting their applications, GCU signaled that the information provided within that environment would be treated as confidential. The presence of Tracking Technologies within this authenticated space is particularly inconsistent with the privacy expectations that password protection creates.

133. As an institution subject to FERPA, GCU was legally obligated to obtain written consent before disclosing personally identifiable information from education records. GCU was authorized to receive Plaintiff's and Class Members' private and education information from their respective web browsers when they used the Website, but it was not authorized to cause Plaintiff's and Class Members' web browsers to transmit that information to Google, Meta, TikTok, and other third parties without their consent or

authorization. GCU therefore obtained Plaintiff's and Class Members' private and education information under false pretenses and exceeded its authority to obtain such information.

134. Plaintiff and Class Members communicated sensitive and protected education information and individually identifiable information, including on password protected pages and student portals, that they intended for only GCU to receive and which they understood GCU would keep private.

135. GCU's disclosure of the substance and nature of Plaintiff's and Class Members' communications to third parties without their knowledge and consent is an intentional intrusion on Plaintiff's and Class Members' solitude or seclusion.

136. GCU therefore obtained Plaintiff's and Class Members' private and education information under false pretenses and exceeded its authority to obtain such information.

137. As a direct and proximate result of GCU's invasion of their privacy, Plaintiff and Class Members have suffered harm and injury, including an invasion of their privacy rights and diminution in the value of their personal information.

138. Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be determined at trial.

**COUNT IV:**
**Unjust Enrichment**
**(Alternative claim, on behalf of the Class)**

Plaintiff incorporates the above paragraphs by reference and further alleges—

139. GCU has received a benefit from Plaintiff and Class Members through the interception of their valuable personal data via the Trackers.

140. By implementing the Trackers on its Website, GCU has been able to procure the interception of users' electronic communications for business purposes, including marketing and advertising, thereby enriching itself at the expense of Plaintiff and Class Members.

141. GCU has also received a benefit from Plaintiff and Class Members in the form of tuition and fees for its educational services. Plaintiff and Class Members would not have provided their valuable private and education information to GCU or paid for GCU's services if they had known GCU was disclosing their private data to third parties and using it for its own gain.

142. GCU has retained these benefits under circumstances which make it inequitable to do so without payment of their value to Plaintiff and Class Members. GCU did not provide any commensurate compensation to Plaintiff and Class Members in exchange for its disclosure of their private information for its own gain.

143. Plaintiff and Class Members have suffered a corresponding detriment, including the loss of the economic value of their personal data and the invasion of their privacy.

144. It would be unjust and inequitable, and would violate fundamental principles of justice, equity, and good conscience, to allow GCU to retain the benefits of its unlawful conduct.

145. Plaintiff and Class Members are entitled to restitution and disgorgement of all profits, benefits, and other compensation obtained by GCU through its wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that this Court:

(a) Certify this case as a class action on behalf of the Class, appoint Plaintiff as Class representative, and appoint Plaintiff's counsel as Class counsel;

(b) Declare that GCU's actions, as described herein, violate the ECPA;

(c) Award Plaintiff and the Class compensatory damages in an amount to be determined at trial;

(d) Award Plaintiff and the Class statutory damages of $10,000 or $100 per day for each violation of the ECPA, whichever is greater, as provided by 18 U.S.C. § 2520(c)(2)(B);

(e) Award Plaintiff and the Class punitive damages;

(f) Award Plaintiff and the Class restitution and disgorgement of all profits, benefits, and other compensation obtained by GCU from its wrongful conduct;

(g) Award injunctive relief requiring GCU to cease procuring the interception of Website users' communications without proper consent; destroy all user data intercepted through the Trackers; and implement appropriate safeguards to ensure the protection of Website users' privacy in the future;

(h) Award pre-judgment and post-judgment interest;

(i) Award reasonable attorneys' fees and costs, as allowed by law; and

(j) Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: September 1, 2026

*/s/ Katrina Carroll*

Katrina Carroll (katrina@csclassactions.com)
Kyle Shamberg (kyle@csclassactions.com)
CARROLL SHAMBERG LLC
200 N. LaSalle, Suite 1650
Chicago, IL 60601
Telephone:(872)-215-6205

Don Bivens*
DON BIVENS, PLLC
15169 N. Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Tel: (602) 762-2661
don@donbivens.com
*pro hac vice forthcoming

*Counsel for Plaintiffs and the Class*